# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 15-03027-01-CR-S-BP |
| JOSEPH ANTHONY SALSBERRY, | ) | |
| Defendant. | ) | |

## **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant Joseph Anthony Salsberry moves to suppress evidence and the fruits obtained therefrom discovered as a result an allegedly illegal entry and subsequent search that occurred at the Fall Creek Inn in Branson, Missouri on August 27, 2014. (Doc. 124.) On December 19, 2017, the undersigned held a hearing on the Motion to Suppress. (*See* Docs. 163 and 165.) Defendant was present with his attorney, Stuart P. Huffman, and the Government was represented by Assistant United States Attorney Timothy A. Garrison. (*See* Doc. 165.) During the hearing, the Court received evidence and heard testimony from Danielle Pruiett, an employee of the Fall Creek Inn in Branson, Missouri; Sheldon Pruiett, general manager of the Fall Creek Inn in Branson, Missouri; and Daniel Smithson, former detective with the Vice Narcotics Unit of the Branson, Missouri Police Department ("BPD").[1] (*Id.*) After careful review of the evidence and for the reasons set forth below, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress, (Doc. 124), be **DENIED**.

---

[1] Mr. Smithson is currently employed as a special agent with the Missouri Department of Revenue. But, at the time of the events described herein, he was a detective with the BPD. Therefore, he is referred to as Det. Smithson throughout this report and recommendation.

## I. Findings of Fact[2]

In July 2014, Detective Daniel Smithson of the BPD learned from a confidential informant ("CI") that Lucas Harper was distributing methamphetamine in the Branson, Missouri area. The CI indicated that Harper received his methamphetamine from a person who resided in Arkansas. The CI also indicated that Harper was living with a known drug offender named Kaitlin Kinkade in an apartment located at 811 South Business Highway 65 in Branson. Detective Smithson conducted a check on Harper's criminal history, and learned that Harper had just been released from the Missouri Department of Corrections in 2014 and was on parole for possession of a controlled substance and possession of a firearm.

Between July and early August 2014, Detective Smithson continued investigating Harper. On August 22, 2014, Detective Smithson learned that Kinkade had been arrested for possession of a controlled substance. In the days following her arrest, Detective Smithson learned from the CI that Harper was moving out of the apartment at 811 South Business Highway 65.

On August 27, 2014, Detective Smithson received information from Sheldon Pruiett, general manager of the Fall Creek Inn and Suites in Branson. Sheldon Pruiett said that on August 26, 2014, Harper had rented Room 219 for two nights. Around morning or mid-day of August 27, Danielle Pruiett, a hotel employee who does housekeeping for the Fall Creek Inn and Sheldon Pruiett's wife, entered Room 219 to conduct routine housekeeping duties. Upon observing the room for housekeeping needs, she noticed drug related items, including a pipe she believed was used for drugs. She took a photograph of the pipe and sent it to her superior, general manager Sheldon Pruiett, per hotel policy. Sheldon Pruiett then went to the room and took several photographs of the items with his phone, including the pipe, some FoodSaver bags,

---

[2] The facts set forth herein are taken from the testimony adduced and the exhibits admitted at the hearing on the instant Motion. The hearing transcript appears as Doc. 165. The Government's exhibit index appears as Doc. 164. Defendant did not offer any exhibits at the hearing.

2

plastic wrap, and a machine vacuum sealer. He then exited and secured Room 219. Sheldon Pruiett called a Taney County officer, who referred him to the BPD, and ultimately spoke with Detective Smithson. He provided Detective Smithson with the photographs of the items in the room and of the entry door to the room. Sheldon Pruiett also provided a copy of the registration form that was completed when Harper paid for the room, and a photocopy of Harper's driver's license. Sheldon Pruiett also said Harper had been seen entering and exiting the room on two occasions; on one of those occasions, Harper was carrying a backpack into the room. Sheldon Pruiett provided a description of the vehicle Harper was driving and gave Detective Smithson the license plate number. Detective Smithson recognized the description and plate number as the vehicle belonging to Kinkade.

After receiving this information from Sheldon Pruiett, Detective Smithson contacted Harper's probation officer. The probation officer stated that a drug test taken during his scheduled visit with Harper during the week of August 18, 2014, showed that Harper was using both methamphetamine and marijuana.

Based upon Sheldon Pruiett's information and the information received from the CI, Detective Smithson obtained a state search warrant from Taney County to search Room 219 at 995 State Highway 165 (Fall Creek Inn and Suites) and Kinkade's Dodge Stratus. Detective Smithson's affidavit to the warrant stated, in relevant part, as follows:

> In July of 2014 I learned from a confidential information Lucas Harper was distributing methamphetamine. I conducted a criminal history check on Harper and observed he was on supervised Probation/Parole for Possession of a Firearm and Possession of a Controlled Substance. I further learned Harper had numerous felony convictions for weapons violations, distribution and possession of controlled substances and intimidating witnesses. I learned Harper was residing at 811 S. Business Hwy 65 in an apartment with known drug user Kaitlin Kinkade.

> On August 22nd, 2014 I learned Kinkade was arrested for Possession of a Controlled Substance and a Probation Violation. I spoke to my informant again and was told Harper was still distributing methamphetamine and was moving out of his residence on Business Hwy 65.
>
> On August 27th, 2014 I received a call from Sheldon Pruiett, a manager with Fall Creek Inn and Suites. Pruiett stated a housekeeper cleaned room #219 which was registered to Harper and observed a glass pipe, clear baggies and other items she believed were related to drugs. Pruiett stated photographs were taken of the substance by him and no items were touched. Pruiett provided me with the photographs. I observed a dark in color glass pipe which is commonly used for methamphetamine use, clear bag with is commonly used to packaging controlled substances for sale. Pruiett stated there was a backpack and computer inside the room. Pruiett provided me with a copy of Harper's Missouri Driver's license he copied and a copy of the registration. The registration indicated Harper checked in to the room on 08/26/2014 and was scheduled to check out on 08/28/2014. Pruiett provided me with a description and license plate number for a vehicle Harper was driving. I recognized the vehicle as being owned by Kinkade.
>
> After speaking with Pruiett, I contacted Officer Wirths with Probation and Parole. I learned Harper tested positive for marijuana and methamphetamine during a schedule visit the week of August 18th.
>
> While writing this warrant, I learned Harper has been observed leaving and returning to the property on two occasions. The last time, Harper was observed carrying a backpack into the room which did not resemble the backpack observed by employees.

(*See* Gov. Exh. 18.) A Taney County, Missouri, Assistant Prosecuting Attorney reviewed and signed the complaint, and Taney County Judge Tony Williams signed the warrant.

Between 8:30 p.m. and 9 p.m. on August 27, 2014, Detective Smithson served the search warrant with other BPD officers. When Detective Smithson knocked and announced their presence, a male later identified as Joseph Salsberry opened the blinds and looked out of the window. The officers ordered him to open the door, and a few seconds later, the door was opened. Salsberry and his wife, Rachel Gilmore, were found inside the room and detained. Upon entering the room, Detective Smithson immediately observed in plain view a package of white crystal-like substance that he believed was methamphetamine.

4

During the course of the search of Room 219 pursuant to the warrant, officers discovered, among other things: two Arkansas state driver's licenses issued to Rachel Gilmore and Joseph Salsberry; a Springfield Armory 1911 .45 caliber handgun loaded with six rounds in the magazine and one round in the chamber; a digital scale with suspected methamphetamine on it; a pair of women's shorts containing a substance that tested positive for methamphetamine; a backpack containing a piece of mail addressed to Joseph Salsberry, cash, and two Crown Royal bags with approximately 115 grams total of suspected methamphetamine; a package of FoodSaver plastic bags and plastic wrap; and other drug paraphernalia.[3]

Gilmore and Salsberry, as well as their co-Defendant Harper, were ultimately charged with the instant offenses, including: conspiracy to distribute methamphetamine, possession with intent to distribute methamphetamine, possession of a firearm in furtherance of a drug trafficking offense, and possession of a firearm by a prohibited person. (*See* Doc. 1.)

## II. Conclusions of Law

In his Motion, Defendant Salsberry argues: (1) the initial entry and search of the hotel room conducted by Danielle and Sheldon Pruiett was unlawful because they were acting as agents of the government; and (2) the subsequent search of the room pursuant to the warrant was unlawful because Detective Smithson's affidavit lacked probable cause. The Government argues that Danielle Pruiett had permission to enter the room as a housekeeper, and further argues that neither Danielle nor Sheldon acted as government agents. Additionally, the Government contends that the warrant was supported by probable cause but, even assuming *arguendo* that it was not, the *Leon* good faith exception applies.[4] The Court takes up the arguments below.

---

[3] A search of the Dodge Stratus also occurred pursuant to the warrant, but no evidence of that search and seizure was presented during the hearing on this matter.
[4] The Government also argues that Salsberry does not have standing to object to the search of the hotel room in this case. There was testimony that the room had no luggage and the beds appeared to be unused. (*See* Doc. 165.)

Defendant's first argument regarding the entry and search of the hotel room by Danielle and Sheldon Pruiett fails. The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. U.S. Const. amend IV; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). Generally, evidence found as a result of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011). However, courts have consistently held that persons such as maids and housekeeping staff have implied or, perhaps even express, permission from the occupant to enter a hotel room without a warrant in the performance of their duties. *See United States v. Jeffers*, 342 U.S. 48, 51 (1951); *Stoner v. State of Cal.*, 376 U.S. 483, 489 (1964) ("when a person engages a hotel room he undoubtedly gives 'implied or express permission' to 'such persons as maids, janitors or repairmen' to enter his room 'in the performance of their duties.'") (quoting *Jeffers*, 342 U.S. at 51). Here, Danielle Pruiett entered Room 219 in the regular course of her duties as a housekeeper at Fall Creek Inn. As the housekeeper, Danielle had permission to enter the room without a warrant. She looked around the room trying to identify housekeeping needs and, at that time, saw drug paraphernalia, which she photographed and sent to the general manager. Therefore, her entry into Room 219 does not run afoul Fourth Amendment protections.

Additionally, "[a] search by a private citizen is not subject to the strictures of the Fourth Amendment unless that private citizen is acting as a government agent." *United States v. Smith*, 383 F.3d 700, 705 (8th Cir. 2004) (citation omitted). In considering whether a private citizen is

---

However, the Government does not dispute that Room 219 was rented for Gilmore and Salsberry by Harper, (*see* Doc. 142), though there was no testimony at the hearing regarding this issue. (*See* Doc. 165.) Given this information, the undersigned does not believe there is sufficient evidence at this time to determine whether Salsberry was a "mere guest" in Room 219 or someone with a reasonable expectation of privacy. *See United States v. Williams*, 521 F.3d 902, 906 (8th Cir. 2008) (noting that a person who does register or pay for a hotel room may still have a reasonable expectation of privacy in the room if he is more than a "mere guest" of the person who registered or paid for the room) (citing *Jeffers*, 342 U.S. at 50-52). As such, the undersigned assumes for the purposes of this report and recommendation that Salsberry has standing to object to the search of Room 219.

acting as a government agent, courts look at several factors, primarily: "whether the government had knowledge of and acquiesced in the intrusive conduct; whether the citizen intended to assist law enforcement agents or instead acted to further his own purposes; and whether the citizen acted at the government's request." *Id.* (citations omitted). In this case, neither Danielle nor Sheldon Pruiett was acting as a government agent. Detective Smithson did not have any knowledge that Danielle had found the drug paraphernalia or that Sheldon had photographed them. Only after Sheldon called Detective Smithson and explained what he and Danielle had done did Detective Smithson become aware that they entered and searched Room 219. Further, in entering room and searching Room 219, Danielle was not intending to assist law enforcement agents. As discussed, she was conducting routine housekeeping for the room. Additionally, Detective Smithson did not ask Danielle or Sheldon to search Room 219, nor did any other law enforcement agent. As such, the evidence of record shows that Danielle and Sheldon Pruiett were not acting as government agents. Therefore, the search was not unlawful and evidence need not be suppressed on these grounds.[5]

Defendant's argument regarding the validity of the warrant also fails. The Fourth Amendment requires that a search warrant be issued only upon a showing of probable cause. *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Scott*, 610 F.3d 1009, 1013 (8th Cir. 2010) (internal marks and quotations omitted). Courts determine whether probable cause exists by looking at the totality of the circumstances. *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). In analyzing a warrant issued upon the supporting affidavit, "only th[e] information which is found within the

---

[5] Additionally, during the hearing, Defendant conceded that Danielle and Sheldon Pruiett were not acting as government agents. (*See* Doc. 165.)

four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (quotation omitted). Further, courts should examine affidavits supporting warrants "under a common sense approach and not in a hypertechnical fashion." *Williams*, 10 F.3d at 593.

Defendant contends that Detective Smithson's affidavit is insufficient because it does not provide enough specificity. Specifically, Defendant states: the affidavit lacks information showing that distribution was connected to Room 2019 at the Fall Creek Inn; there was no independent corroboration that drug activity was occurring in or around Room 219; the CI was not able to state that any drug transactions took place at Room 219 or observe contraband there; and the affidavit did not contain any facts relating to Gilmore or Salsberry. These assertions are misplaced because, considering the totality of the circumstances, the affidavit contained sufficient probable cause for the issuance of a warrant. The affidavit states that Detective Smithson had information that Harper, a felon with a criminal history including drug offenses, was distributing methamphetamine. It further provides that, during the course of his investigation into Harper, he received information from Sheldon Pruiett that Harper was staying in a room at the Fall Creek Inn where drug paraphernalia had been found by housekeeping staff. Sheldon Pruiett sent photographs of those items to Detective Smithson. Based on his training and experience, Detective Smithson recognized the items as a pipe commonly used for methamphetamine use and clear bags commonly used to package controlled substances for distribution. Additionally, it states that Sheldon Pruiett saw Harper entering and exiting that room and using a vehicle that Detective Smithson recognized from his investigation. This information shows that, given the totality of the circumstances, there was a fair probability that contraband or evidence of a crime will be found in Room 219. Therefore, the affidavit contained

8

sufficient probable cause for the issuance of a warrant to search Room 219, and evidence need not be suppressed on these grounds.

Even assuming that Detective Smithson's affidavit was insufficient, the *Leon* good faith exception would apply. If an affidavit in support of a search warrant fails to provide probable cause for the issuance of a warrant, the *Leon* good faith exception will support the admissibility of the evidence seized pursuant to the warrant if it appears that the officers executing the warrant were acting in "objectively reasonable reliance" on a warrant issued by a neutral judge. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *United States v. Murphy*, 69 F.3d 237, 241 (8th Cir. 1995), *cert. denied*, 516 U.S. 1153 (1996). The good faith inquiry is confined to the "objectively ascertainable question" of whether a reasonably well trained officer should have known that the search was illegal despite the issuing judge's authorization. *See United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008); *United States v. Puckett*, 466 F.3d 626, 629-30 (8th Cir. 2006). There are four limited circumstances in which the *Leon* good faith reliance doctrine does not apply: (1) the affiant misled the judge by including information in the affidavit that the affiant knew was false or would have known was false, except for a reckless disregard for the truth; (2) no reasonably well-trained officer could rely on the warrant, as it was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; (3) the judge wholly abandoned his neutral and detached position and acted as a rubber stamp; or (4) the warrant itself is so facially defective that the executing officer cannot presume its validity. *See United States v. Leon*, 468 U.S. at 922-23.

Here, the officers reasonably relied on the warrant issued by the Taney County Judge. On its face, there is nothing to alert a reasonably well-trained officer like Detective Smithson that the warrant was invalid or that the resulting search was illegal. Further, none of the four limited

circumstances where *Leon* would not apply are applicable to this case. As such, the *Leon* good faith exception would apply in this case if the affidavit had not contained sufficient probable cause. Therefore, suppression of the evidence seized during the course of the search conducted on August 27, 2014 and the fruits obtained therefrom is not warranted.

## III. Recommendation

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress, (Doc. 124), be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: May 18, 2017